UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:14CR ( ) |
| | : | |
| | : | VIOLATION: |
| v. | : | |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| | : | |
| EARL O'GARRO, JR. | : | |

3:14-cr-227 AWT

INDICTMENT

The Grand Jury charges:

GENERAL ALLEGATIONS

Unless otherwise indicated, at all times relevant to this Indictment:

The Defendant and Relevant Entities

1. The defendant EARL O'GARRO, JR. ("O'GARRO") was the President, Chief Executive Officer and an owner of Hybrid Insurance Agency, LLC. In May 2010, O'GARRO was licensed by the State of Connecticut Department of Insurance to do business as a State of Connecticut Property and Casualty Insurance Producer and a State of Connecticut Surplus Insurance Lines Broker. O'GARRO is a resident of Connecticut.

2. Hybrid Insurance Agency, LLC, d/b/a Hybrid Insurance Group ("Hybrid"), was an insurance brokerage specializing in placing wholesale and specialty line insurance products. Hybrid was a registered business entity with the Connecticut Secretary of State with offices located at 30 Lewis Street, Hartford, Connecticut.

1

3. The State of Connecticut Department of Economic and Community Development ("DECD") was an agency within the Executive Department of the government of the State of Connecticut. DECD offered various assistance programs to Connecticut-based business, including the Small Business Express loan and grant program.

4. Victim 1 was a company that administers the payment of premiums on behalf of insured entities.

5. Victim 2 was an insurance company offering excess liability insurance policies.

6. Victim 3 was an insurance company offering excess liability insurance policies.

7. Insurance Company 1 was an insurance company.

COUNT ONE
(Wire Fraud)

The Scheme to Defraud

8. From in or about November 2011 through in or about October 2013, in the District of Connecticut and elsewhere, O'GARRO devised and intended to devise and participated in a scheme and artifice to defraud the State of Connecticut, various clients and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

## The Purpose of the Scheme to Defraud

9. The purpose of the scheme was for O'GARRO to enrich himself and to support Hybrid's business operations by defrauding the State of Connecticut and others with whom O'GARRO did business by means of materially false and fraudulent pretenses, representations and promises.

## The Execution of the Scheme

10. The manner and means by which O'GARRO sought to and did execute the scheme to defraud included, among other things, the following:

11. It was part of the scheme to defraud that, in January 2012, O'GARRO on behalf of Hybrid submitted an application to DECD pursuant to the Small Business Express loan and grant program. The purpose of the application was to secure a Small Business Express loan in the amount of $100,000 and a Small Business Express grant in the amount of $26,320. Among other things, the application required applicants to provide truthful information concerning the applicant's financial condition, including cash on hand, the purpose of the requested funding, capital costs, working capital costs and collateral.

12. It was part of the scheme to defraud that O'GARRO provided false and misleading information to DECD concerning Hybrid's financial condition. In particular, O'GARRO falsely inflated the value of Hybrid's cash assets in order to increase the likelihood that his application would be approved for the amount of funds he sought. Based in part on the false statements contained in O'GARRO's application, DECD approved Hybrid's Small Business Express application, and

awarded Hybrid a Small Business Express loan in the amount of $100,000 and $26,320 matching grant, subject to entering a formal agreement with Hybrid. On February 21, 2012, DECD and Hybrid entered into an "Assistance Agreement By and Between the State of Connecticut Acting by the Department of Economic and Community Development and Hybrid Insurance Agency, LLC." O'GARRO signed the agreement and, in so doing, certified the following, which he knew to be false:

> all financial statements, including, without limitation, balance sheets and profit and loss statements, delivered to the (DECD) Commissioner are correct and complete, and fairly present the financial position and results of operations of the Applicant at the times of and for the periods reflected by financial statements furnished by the applicant in connection with the funding do not contain any untrue statement of material fact and do not omit any material fact whose omission would make the statements contained therein or herein misleading.

On or about March 5, 2012, the Small Business Express loan and grant were disbursed to Hybrid.

13. It was part of the scheme to defraud that, in July 2013, O'GARRO sent a series of electronic communications to Victim 1, in which O'GARRO falsely claimed that he was an officer and underwriter for Insurance Company 1 with authority to direct Victim 1 to release premium payments. Acting in his assumed capacity, O'GARRO directed Victim 1 to remit to Hybrid premium payments for policies associated with four corporate entities purportedly insured by Insurance Company 1. Three of these four companies: Blaque Rock Capital LLP d/b/a Us Restaurant; Marlbro's Restaurant Group LLP d/b/a Us Restaurant; and Epplied Staffing Solutions LLC, were registered with the Connecticut Secretary of State and

associated with O'GARRO. The fourth company, D&D Moving Company was not registered with the Connecticut Secretary of State, but was utilized by O'GARRO as a repository for fraudulently obtained funds. In fact, Insurance Company 1 had not issued any policies for any of these entities. In response to the fraudulent communications created by O'GARRO, Victim 1 remitted approximately $691,266.75 to Hybrid, which O'GARRO then converted to his own use.

14. It was part of the scheme to defraud that, on July 18, 2013, O'GARRO directed the City of Hartford (the "City") to transfer $868,244.00 from the City to Hybrid. In response, the City electronically transferred $868,244.00 to Hybrid. Of that sum, $441,900.00 constituted a premium payment to Victim 2, and $228,097.00 constituted a premium payment to Victim 3. O'GARRO did not remit either of the premium payments, and instead converted the money to his own use. It was part of the scheme to defraud that, on September 6, 2013, O'GARRO falsely advised the City that the premium payments had been remitted to Victim 2 and Victim 3.

15. On or about July 19, 2013, in the District of Connecticut and elsewhere, O'GARRO, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud transmitted and caused to be transmitted by means of wire communication in interstate commerce an electronic transfer of $868,244.00 from the City to Hybrid.

A TRUE BILL

/s/
---
FOREPERSON

UNITED STATES OF AMERICA

_____
DEIRDRE M. DALY
UNITED STATES ATTORNEY

_____
CHRISTOPHER M. MATTEI
ASSISTANT UNITED STATES ATTORNEY